`

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

**SHIRLEY BRINKLEY,**

     **Plaintiff,**

**v.**
                                 **Civil Action No.: 08-12-WDS**

**WYETH, INC. d/b/a WYETH,**
**PLIVA INC., and SCHWARZ**
**PHARMA, INC.,**

     **Defendants.**

**COMPLAINT**

COMES NOW Plaintiff, Shirley Brinkley**,** by and through her undersigned attorneys, and files this Complaint for Damages against the above-named Defendants and shows the Court the following:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff, over the age of majority, is a citizen, and resident of the State of Missouri.  Plaintiff brings this action for the purpose of recovering all damages allowed by law for personal injuries she suffered as a result of ingesting metoclopramide, a prescription drug.

2.    Defendant Wyeth Inc. d/b/a Wyeth (hereinafter "Wyeth") is a Delaware corporation with its principal place of business at 5 Giralda Farms, Madison, New Jersey 07940, and is the successor in interest to A.H. Robins Company, Inc., a Virginia corporation which first obtained approval by the Food and Drug Administration to distribute metoclopramide, under the brand name of Reglan, in the United States.  Until December 27, 2001, Wyeth manufactured and

1

distributed Reglan through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania. Metoclopramide is the active ingredient of Reglan.  Wyeth also manufactures and distributes generic metoclopramide through its ownership of ESI Lederle, Inc. (hereinafter referred to as "ESI"), which was formerly a subsidiary of Wyeth and was merged into Wyeth on December 15, 1998.  On December 27, 2001, Wyeth sold the rights and liabilities associated with Reglan tablets and Reglan syrup to Schwarz Pharma, Inc., a Delaware corporation with its principal place of business in Wisconsin.  References in this Complaint to Wyeth include both Wyeth, INC. individually and as successor in interest to A.H. Robins, Inc., American Home Products Corporation, and ESI.  At all times material hereto, Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, metoclopramide tablets in the State of Missouri and in interstate commerce.  Wyeth may be served with process through its registered agent, The Prentice Hall Corp. System, 40 Technology Parkway South, # 300, Norcross, Kentucky 30092.  Wyeth, Inc. is subject to the jurisdiction and venue of this Court.

3.      Defendant PLIVA Inc. (hereinafter "PLIVA"), is a New York corporation with its principal place of business in New Jersey, and is a subsidiary or division of PLIVA d.d., a corporation organized, existing and doing business under and by virtue of the laws of the Republic of Croatia, headquartered in Zagreb, Croatia.  At all times material hereto, PLIVA was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, metoclopramide tablets in the State of Missouri and in interstate commerce.  PLIVA may be

2

served with process through its agent for service of process, The Corporation Trust Company, located at 820 Bear Tavern Road, 3rd Floor, West Trenton, New Jersey 08628. PLIVA, INC. is subject to the jurisdiction and venue of this Court.

4.     Defendant, Schwarz Pharma, Inc. (hereinafter "Schwarz") is a Delaware corporation with its principal place of business in Mequon, Wisconsin. On December 27, 2001, Schwarz purchased the rights and liabilities associated with metoclopramide tablets from Defendant Wyeth pursuant to an Asset Purchase Agreement, executed on that date, which obligated it to be responsible for claims relating to or arising out of the ingestion or use of metoclopramide from and after March 31, 2002, subject to a right to indemnification by Wyeth up to an amount not presently known by Plaintiffs. Plaintiffs are informed and believe that at all times relevant to this lawsuit, Defendant Schwarz and/or one of its predecessors in interest and/or one of its family of wholly owned divisions was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, metoclopramide tablets in the State of Missouri and in interstate commerce. Schwarz may be served with process through its registered agent, CSC Entity Services, LLC, 103 Foulk Road, Suite 200, Wilmington, Delaware 19803. Schwarz is subject to the jurisdiction and venue of this Court.

5.     All Defendants, identified *supra*, inclusive, and each of them, may be referred to in this complaint collectively as the "Defendants."

6.     At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing,

assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising the pharmaceutical drugs known as Reglan, metoclopramide HCl and/or metoclopramide in the State of Missouri and in interstate commerce.

## FACTUAL ALLEGATIONS

7.      During all material times, Shirley Brinkley, (hereinafter referred to as "Plaintiff") has been a resident of the State of Missouri.

8.      On or about June 1992, Dr. Burnell Landers, Plaintiff's physician prescribed Reglan to Plaintiff to treat the motility of Plaintiff's stomach.

9.      Plaintiff's pharmacy filled Plaintiff's prescription for Reglan, with the generic equivalent, metoclopramide according to Missouri statutes.

10.     Plaintiff ingested the prescription drug, Reglan, metoclopramide and/or metoclopramide as prescribed until on or about April 2007.

11.     The active ingredient, metoclopramide and metoclopramide HCl is a dopamine antagonist.

12.     Upon information and belief, in prescribing the Reglan, metoclopramide, and/or metoclopramide HCl drugs to Plaintiff on a long-term basis, Plaintiffs' physicians relied upon information published in the package inserts and/or the Physician's Desk Reference (hereinafter "PDR") or otherwise disseminated by the Reference Listed

13.      Drug Company (hereinafter "RLD") and/or the New Drug Application Holder (hereinafter "NDA holder"), in particular, that information disseminated by Defendants Wyeth and Schwarz.

14.     Plaintiffs' physician was not aware of information different from or contrary to

4

the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR.

15.    Plaintiff's long term ingestion of Reglan, metoclopramide and/or metoclopramide HCl resulted in overexposure to the drugs Reglan, metoclopramide, and/or metoclopramide HCl which caused her to suffer serious, permanent and disabling neurological injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically Tardive Dyskinesia.

16.    Use of Reglan, metoclopramide HCl and/or metoclopramide caused Plaintiff to suffer serious, permanent and disabling injuries including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems.  Because of the injuries Plaintiff suffered from the use of Reglan, metoclopramide HCl and/or metoclopramide, Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages.

17.    Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendant Wyeth and Defendant Schwarz (as the Reference Listed Drug and or New Drug Applicant holder and Defendant PLIVA (the abbreviated New Drug Applicant holder) dissemination  of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the potential effects of exposure to Reglan, metoclopramide, and/or metoclopramide HCl and the ingestion of Reglan, metoclopramide, and/or metoclopramide HCl  drug to the medical community, physicians, Plaintiff's physician, Plaintiff and other foreseeable users of the drug.

18.    Reglan, metoclopramide HCl and/or metoclopramide was not approved by the United States Food and Drug Administration for long-term use.

19.    Because of the misleading information that the Defendants provided to physicians and the FDA about the true risks associated with the use of Reglan, metoclopramide HCl and/or metoclopramide and because of the failure of the Defendants and each of them to adequately inform physicians generally, including Plaintiff's physicians, about the true risks associated with the use of Reglan, metoclopramide HCl and/or metoclopramide, at all times relevant to this lawsuit, while Plaintiff was taking Reglan, metoclopramide HCl, and/or metoclopramide, her physicians never informed her of any side effects associated with Reglan, metoclopramide HCl, metoclopramide or that Reglan, metoclopramide HCl and/or metoclopramide was only approved for short term use (up to 12 weeks).

20.    At all times material hereto, Defendant Wyeth, individually and as successor-in-interest to A.H. Robins Company, was aware of the serious side effects caused by Reglan, metoclopramide HCl and/or metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

21.    Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)[1] schema.

_____

[1]Upon information and belief, Plaintiff believes Defendant WYETH to be the holder of multiple NDAs' for Reglan, metoclopramide and metoclopramide HCl.

6

22.     Under the FDA schema, Wyeth was/is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan, metoclopramide and metoclopramide HCl.

23.     Under the FDA schema, Wyeth knew, as an NDA applicant,  that it must fully, truthfully and accurately disclose to the FDA data, and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiff's physician, Plaintiff and other like foreseeable users of Reglan, metoclopramide and metoclopramide HCl once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for Reglan, metoclopramide and metoclopramide HCl.

24.     Wyeth failed to fully, truthfully and accurately disclose Reglan, metoclopramide and metoclopramide HCl data to the FDA, and as a result intentionally and fraudulently misled the medical community, physicians, Plaintiff's physician and Plaintiff about the risks associated with long term use of metoclopramide.

25.     Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide, and metoclopramide HCl, Wyeth has a duty to ensure its warnings to the medical community are accurate and adequate; has a duty to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

26.     Wyeth knowingly, intentionally and negligently disseminated misleading information to physicians' across the country, through a publication known as the *Physicians'*

*Desk Reference*, labeling information for Reglan, metoclopramide and metoclopramide HCl which mislead the medical community, physicians and Plaintiff's physician about the risks of long term ingestion of the drug.

27.     Wyeth knowingly, intentionally and negligently disseminated misleading information to physicians' across the country, through a publication known as the *Physicians' Desk Reference*, labeling information for Reglan, metoclopramide and metoclopramide HCl which misled the medical community, physicians and Plaintiff's physician about the increased risk of extrapyramidal side effects, including tardive dyskinesia.

28.     At all times material hereto, Defendants, knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the risks associated with use of Reglan, metoclopramide HCl and/or metoclopramide and that consequently there was a widespread tendency for physicians to prescribe Reglan, metoclopramide HCl and/or metoclopramide for inappropriate long-term use.  Therefore, Defendants knew or should have known that the package insert and the *Physician's Desk Reference* monograph for Reglan, metoclopramide HCl and/or metoclopramide did not adequately inform physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide, particularly for patients whose bodies do not metabolize Reglan and/or metoclopramide effectively.

29.     Defendants had access to and knew that severe side effects would result from the use of Reglan, metoclopramide HCl and/or  metoclopramide in the manner in which physicians were prescribing Reglan, metoclopramide HCl and/or metoclopramide and the fact that physicians did not fully understand the risks associated with Reglan, metoclopramide HCl and/or metoclopramide through the defendants participation, individually and jointly, in or its ability to

8

review data from clinical studies that were not publicly available, through its review of domestic and international medical literature concerning Reglan, metoclopramide HCl and/or metoclopramide and through ongoing litigation.

30.     Wyeth failed to adequately warn physicians about the risks associated with Reglan, metoclopramide HCl and/or metoclopramide despite the fact that Wyeth knew that physicians, the medical community, the generic pharmaceutical industry, Plaintiff and other similarly situated relied on Wyeth to disclose what it knew and what it should have known from a prudent review of the information that it possessed or to which it had access.

31.     Defendant Wyeth's predecessor in interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan, metoclopramide HCl and/or metoclopramide is safe in long-term use.  When A.H. Robins made those representations, A.H. Robins knew that those physicians would share that information with other physicians in their community and that eventually many physicians would come to rely on A.H. Robins' express warranties about Reglan, metoclopramide HCl and/or metoclopramide's safety in long-term use.  A.H. Robins' express warranties about the safety of Reglan, metoclopramide HCl and/or metoclopramide in long-term use were false.

32.     As successor in interest to A.H. Robins Company, Inc., Wyeth is legally responsible for representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan, metoclopramide HCl and/or metoclopramide.

33.     Defendant Wyeth knew, or should have known through the exercise of reasonable care, that the package insert for Reglan, metoclopramide HCl and/or metoclopramide substantially understated the prevalence of acute and long term side effects of Reglan,

metoclopramide HCl and/or metoclopramide.  Wyeth failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short term use and long term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

34.     Defendant Wyeth and its predecessors in interest had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan, metoclopramide HCl and metoclopramide for long term use that was not safe for patients.  Defendant Wyeth and its predecessors in interest had actual knowledge, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan, metoclopramide HCl and/or metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.  Defendant Wyeth also had actual knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal side effects of Reglan, metoclopramide HCl and/or metoclopramide in patients who receive the drug for long term use is approximately 100 times greater than disclosed in Wyeth's package insert for Reglan and the *Physician's Desk Reference* monograph for Reglan brand metoclopramide.  Defendant Wyeth also knew, or through the exercise of reasonable care should have known, that many patients who use Reglan, metoclopramide HCl and/or metoclopramide are not able to effectively metabolize Reglan, metoclopramide HCl and/or metoclopramide and that as a foreseeable consequence of their inability to effectively metabolize Reglan, metoclopramide HCl and/or metoclopramide, those patients have a greater risk of developing serious and permanent injuries.  Defendant Wyeth failed to disclose this information to the medical community and failed to adequately disclose this information to the generic

pharmaceutical industry. Defendant Wyeth was aware that its failure to disclose this information to the medical community and its failure to disclose it to the generic pharmaceutical industry would probably result in serious injury to patients who were prescribed Reglan, metoclopramide HCl and/or metoclopramide by a physician who was not aware of this information.  By failing to disclose this information to the medical community and the generic pharmaceutical industry, Defendant Wyeth acted in willful and wanton disregard of the rights of persons in the Plaintiff's class, and this conduct caused serious injury to the Plaintiff.

35.    On or about December 27, 2001, Defendant Schwarz became entitled to access to all of the information and knowledge then possessed by Defendant Wyeth concerning Reglan, metoclopramide HCl and/or metoclopramide, as more particularly alleged above.

36.    Defendant Schwarz purchased from Wyeth the rights and *liabilities* associated with Reglan, metoclopramide, metoclopramide syrup and metoclopramide HCl tablets, upon information and belief, the terms of which obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan, metoclopramide and metoclopramide HCl, subject to a right of indemnification from Wyeth up to a certain dollar amount.[2]

37.    Wyeth failed to review the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

38.    Wyeth failed to review the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in

_____

2.    Plaintiff does not have information regarding the maximum amount of liability under the defendants' indemnification agreement.

the Elderly."

39.     Wyeth failed to review the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda Ganzini.

40.     Wyeth failed to review the epidemiological study published and written by Dr. Daniel Sewell in 1994, regarding the frequency of tardive dyskinesia in metoclopramide treated patients.

41.     Wyeth failed to review the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia in patients exposed to long term neuroleptic drugs.

42.     Schwarz failed to review the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

43.     Schwarz failed to review the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in the Elderly."

44.     Schwarz failed to review the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda Ganzini.

45.     Schwarz reviewed the epidemiological study published and written by Dr. Daniel Sewell in 1994, regarding the frequency of tardive dyskinesia in metoclopramide treated patients.

12

46.     Schwarz reviewed the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia in patients exposed to long term neuroleptic drugs.

47.     Under the FDA schema, as the Referenced Listed Drug Company for Reglan, metoclopramide and metoclopramide HCl, Wyeth and Schwarz have a duty to ensure its warnings to the medical community are accurate and adequate; have a duty to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

48.     Schwarz manufactured, marketed and distributed Reglan, metoclopramide and/or metoclopramide HCl at all relevant material times herein and/or are the RLD or NDA Sponsor.

49.     Wyeth breached its duty to the medical community, Plaintiff's physicians, Plaintiff and other foreseeable users similarly situated, in that it failed to ensure Reglan, metoclopramide and metoclopramide HCl warnings to the medical community, physicians, Plaintiff's physician and Plaintiff were accurate and adequate.

50.     Wyeth breached its joint duty to the medical community, to Plaintiff's physicians, Plaintiff, and other foreseeable users similarly situated, in that it failed to conduct post market safety surveillance and report that information to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

51.     Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because it failed to review  all adverse drug event information (ADE),[3] and to report any information bearing upon the adequacy and/or

_____

[3] *See* 21 C.F.R. § 317.80(b).

accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, to  the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

52.     Wyeth breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that it failed to periodically review all medical literature regarding Reglan, metoclopramide, and metoclopramide HCl, and failed to report data, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide and metoclopramide HCl.

53.     Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, in that it failed to ensure Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community, physicians, Plaintiff's physician and Plaintiff were accurate and adequate.

54.     Schwarz breached its joint duty to the medical community, to Plaintiff's physician, Plaintiff and other foreseeable users similarly situated, in that it failed to conduct post market safety surveillance and failed to report that information to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

55.     Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

14

56.     Schwarz breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that it failed to periodically review all medical literature regarding Reglan, metoclopramide and/or metoclopramide HCl, and failed to report data, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

57.     Despite this knowledge, assuming it was transmitted to Schwarz by Wyeth as contemplated in the Asset Purchase Agreement, Schwarz failed to disclose this information to the medical community and the generic pharmaceutical industry and thereby acted in willful and wanton disregard of the rights of persons in the Plaintiff 's class, and this conduct caused serious injury to the Plaintiff.

58.     Defendant PLIVA submitted an Abbreviated New Drug Application (hereinafter "ANDA") to the U.S. Food and Drug Administration, based on representations made Defendants Wyeth and/or Schwarz (as the Reference Listed Drug Company), requesting permission to manufacture, market, and distribute metoclopramide and/or  metoclopramide HCl.

59.     Under the ANDA process, the Code of Federal Regulations *required* Defendant PLIVA to submit a label for metoclopramide and metoclopramide HCl, initially identical in all material aspects to the reference listed drug label.

60.     Defendant PLIVA began selling generic metoclopramide and/or metoclopramide HCl in 1988. PLIVA did not investigate the accuracy of its metoclopramide and/or metoclopramide HCl drug label, PLIVA did not review the medical literature for the metoclopramide and/or metoclopramide HCI drug.  PLIVA is under a duty to ensure that its metoclopramide label is accurate.

15

61.     PLIVA did not review the article published in the *Archives of Internal Medicine*, in 1989, and written by Joseph Jankovic, entitled "Metoclopramide-Induced Movement Disorders: A Review of the Literature."

62.     PLIVA did not review the article published in the *Annals of Pharmacology*, in 1992, written by Dr. Ronald Stewart, entitled "An Analysis of Inappropriate Long-Term Use in the Elderly."

63.     PLIVA did not review the epidemiological study published in the medical literature, specifically the *Archives of Internal Medicine,* in June of 1993, and written by Linda Ganzini.

64.     PLIVA did not review the epidemiological study published and written by Dr. Daniel Sewell in 1994, regarding the frequency of tardive dyskinesia and tardive dystonia in metoclopramide treated patients.

65.     PLIVA did not review the medical literature written by authors, Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia and tardive dystonia in patients exposed to long term neuroleptic drugs.

66.     PLIVA relied upon the name brand manufacturer to review the aforementioned medical literature for the metoclopramide drug.

67.     PLIVA relied upon the reference listed drug company for the reference listed metoclopramide drug to review the aforementioned medical literature.

68.     Under the Code of Federal Regulations, Defendant PLIVA, as an ANDA holder, had a  duty to ensure its Reglan, metoclopramide, and metoclopramide HCl warnings to the medical community were accurate and adequate; had a duty to conduct post market safety

16

surveillance;  to review all adverse drug event information (ADE), and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan, metoclopramide or metoclopramide HCl, to the medical community, Plaintiff's physician, Plaintiff and other foreseeable users.

69.     Under the Code of Federal Regulations, if Defendant PLIVA, as the ANDA holder, discovers information in the course of the fulfillment of its duties as outlined above, Defendant PLIVA must report that information to  the medical community, Plaintiff's physician, Plaintiff and other foreseeable users of Reglan, metoclopramide and metoclopramide HCl to ensure that its warnings are continually accurate and adequate.

70.     PLIVA breached its duty to the medical community, Plaintiff's Physician, Plaintiff, and other foreseeable users similarly situated because it failed to ensure Reglan, metoclopramide, and/or metoclopramide HCl warnings to the medical community, Plaintiff's physician, Plaintiff, other foreseeable users similarly situated were accurate and adequate.

71.     PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to conduct post market safety surveillance of Reglan, metoclopramide, and/or metoclopramide HCl, and failed to report any significant data regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

72.     PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and  other foreseeable users similarly situated because it failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects

17

caused by Reglan, metoclopramide or metoclopramide HCl, to the medical community, Plaintiff's physician, Plaintiff and other like foreseeable users.

73.     PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to periodically review all medical literature and failed to report any significant data concerning neurological side effects, *regardless of the degree of significance*, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan, metoclopramide, and/or metoclopramide HCl.

74.     PLIVA breached its duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated because it failed to report to the FDA *any* data (medical literature) concerning the risk and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing the active ingredient metoclopramide and/or metoclopramide HCl.

75.     Defendant PLIVA chose to rely on Defendant Wyeth and its predecessors in interest, to keep abreast of current medical literature concerning Reglan, metoclopramide HCl and/or metoclopramide and to inform them concerning its knowledge of how physicians were using Reglan, metoclopramide HCl and/or metoclopramide and any dangers that were associated with that use, by properly reporting their knowledge to the FDA despite the fact that  PLIVA knew, or should have known that Wyeth and its predecessors in interest had a history of failing to adequately warn physicians about other dangerous products.  Defendant PLIVA failed to exercise reasonable care to independently monitor their sales of metoclopramide and the medical literature, which would have alerted them to the fact that Reglan, metoclopramide HCl and/or metoclopramide was widely over prescribed as a result of inadequate warnings in the package

inserts and PDR monographs for Reglan brand and generic metoclopramide. Defendant PLIVA

also knew, or should have known in the exercise of reasonable care that the package insert for

Reglan, metoclopramide HCl and/or metoclopramide substantially understated the prevalence of

acute dystonic reactions and other acute side effects of Reglan, metoclopramide HCl and/or

metoclopramide and failed to use reasonable care to modify the package insert, and/or seek FDA

approval to modify the package insert in order to adequately warn physicians and consumers.

### FRAUDULENT CONCEALMENT
### (As against Defendant Wyeth)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

this Complaint with the same force and effect as if fully set forth herein.

77.     At all times mentioned in this Complaint, Wyeth and its predecessors had the duty

and obligation to disclose to Plaintiff and to her physicians the true facts concerning Reglan/

metoclopramide, that is, that Reglan, metoclopramide HCl and/or metoclopramide was

dangerous and defective and how likely it was to cause serious consequences to users, including

injuries as described in this Complaint, and the true level of risk involved in prescribing Reglan,

metoclopramide HCl and/or metoclopramide for the purposes indicated. Wyeth and its

predecessors made the affirmative representations set forth above to Plaintiff, her prescribing

physicians and the general public prior to the day Plaintiff was first prescribed and used Reglan,

metoclopramide HCl and/or metoclopramide while concealing the material facts set forth below.

78.     At all times mentioned in this Complaint, Wyeth, its predecessors and successors

in interest, had the duty and obligation to disclose to Plaintiff and to her physicians the true facts

concerning Reglan, metoclopramide HCl and/or metoclopramide that is that long term use and

exposure could cause central nervous system side effects, depression with suicidal ideation,

akathisia, akinesia, tardive dyskinesia and tardive dystonia.  At all times mentioned in this Complaint, Wyeth, its predecessors and successors in interest intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians, and therefore from Plaintiff, with the intent to defraud as alleged in this Complaint.

79.    At all times mentioned in this Complaint, neither Plaintiff nor her physicians were aware of the facts set forth above.  Had they been aware of those facts, they would not have acted as they did, that is, would not have utilized Reglan, metoclopramide HCl and/or metoclopramide to treat the motility of Plaintiff's stomach.

80.    As a proximate result of the concealment or suppression of the facts set forth above, Plaintiff was prescribed and took Reglan, metoclopramide HCl and/or metoclopramide and subsequently became ill, thereby sustaining the injuries and damages as set forth in this Complaint.

81.    In doing the acts alleged in this Complaint, Wyeth, its predecessors and its' successor in interest, Schwarz, acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages and to Wyeth and Schwarz wealth, and sufficiently large to be an example to others and to deter Wyeth and Schwarz and others from engaging in similar conduct in the future.

## CAUSES OF ACTION
### I.    STRICT PRODUCTS LIABILITY

82.    Defendants are liable as the manufacturers, distributors and/or sellers of the drug Reglan, metoclopramide HCl and/or metoclopramide because when sold, it was in a defective and unreasonably dangerous condition.  Defendants owed a strict duty to Plaintiff not to harm her through the use of the drug Reglan, metoclopramide HCl and/or metoclopramide.

20

**A.    DESIGN DEFECT**

83.    Reglan, metoclopramide HCl and/or metoclopramide was defective in design and/or formulation in that, when it left the hands of Defendants and/or their representatives, the foreseeable risks of serious harm posed by the drug outweighed its alleged benefits.   The foreseeable risks of serious harm were so great that Plaintiff, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Reglan, metoclopramide HCl and/or metoclopramide.

84.    Reglan, metoclopramide HCl and/or metoclopramide was placed into the stream of commerce by Defendants acting through authorized agents, servants, employees and/or representatives.   Plaintiff was prescribed Reglan, metoclopramide HCl and/or metoclopramide by Plaintiff's physicians and used the drug in a manner reasonably foreseeable by Defendants.

85.    The Reglan, metoclopramide HCl and/or metoclopramide ingested by Plaintiff was expected to and did reach Plaintiff without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.   As a result of the use of Reglan, metoclopramide HCl and/or metoclopramide, Plaintiff suffered serious, permanent and disabling neurological injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically Tardive Dyskinesia

**B.    MARKETING DEFECT-INADEQUATE AND IMPROPER WARNINGS**

86.    Reglan, metoclopramide HCl and/or metoclopramide was marketed to physicians to be prescribed to their patients and was marketed and advertised directly to the consuming public.   Reglan, metoclopramide HCl and/or metoclopramide, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings

regarding the serious risks of ingesting the drug.  Further, Defendants failed to warn of these serious risks after Defendants had knowledge of same.  The information provided to consumers did not reflect Defendants' knowledge that Reglan, metoclopramide HCl and/or metoclopramide was not safe and effective as indicated in its aggressive marketing campaign, nor were consumers made aware that ingesting the drug could result in serious, permanent and disabling neurological injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically Tardive Dyskinesia.  Full and proper warnings that accurately and fully reflected the unreasonable risk of central nervous system side effects, depression, akathisia, akinesia, tardive dyskinesia, tardive dystonia, visual disturbances and/or interference with drug metabolism, especially in female patients diagnosed with diabetes mellitus and more particularly in patients who are poor metabolizers of metoclopramide, due to the ingestion of Reglan, metoclopramide HCl and/or metoclopramide should have been disclosed by Defendants.

87.    Plaintiff was prescribed Reglan, metoclopramide HCl and/or metoclopramide by Plaintiff's physicians and used the drug in a manner reasonably foreseeable by Defendants. Reglan, metoclopramide HCl and/or metoclopramide was expected to and did reach Plaintiff without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.  Plaintiff was not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Reglan, metoclopramide HCl and/or metoclopramide.

As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Reglan, metoclopramide HCl and/or metoclopramide, as manufactured and/or supplied by Defendants and their representatives, Plaintiff ingested Reglan,

metoclopramide HCl and/or metoclopramide and subsequently became ill, thereby sustaining the injuries and damages as set forth in this Complaint.

## II.   VIOLATION OF THE MISSOURI FAIR MERCHANDISING PRACTICES ACT

88.   Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

89.   Defendants, through their agents, servants and employees, employed deception, fraud false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission of material facts in connection with the sale or advertisement of Reglan, metoclopramide HCl and/or metoclopramide, in violation of Missouri Fair Merchandising Practices Act, RSMo §407.020 and §407.025.

90.   Defendants' offer for sale of a consumer product, Reglan, metoclopramide HCl and/or metoclopramide, in trade or commerce, constitutes a representation that the product, Reglan, metoclopramide HCl and/or metoclopramide, is reasonably safe for its intended purpose.

91.   Defendants' offer for sale of Reglan, metoclopramide HCl and/or metoclopramide to Missouri consumers constitutes a representation that Reglan, metoclopramide HCl and/or metoclopramide is/was reasonably safe for its intended use.

92.   Defendants have engaged in deceptive acts or practices, in violation of the Missouri Fair Merchandising Practices Act, including, but not limited to, the following:  (1) knowingly, intentionally, and/or recklessly omitting, concealing, and/or suppressing its own data from investigations and clinical trials, other analyses, studies, tests, understandings, and conclusions about the true efficacy of Reglan, metoclopramide HCl and/or metoclopramide; (2) knowingly, intentionally, and/or recklessly omitting, concealing, and/or suppressing its own data from investigations and clinical trials, other analyses, studies, tests, understandings, and

23

conclusions about the safety of Reglan, metoclopramide HCl and/or metoclopramide; (3) knowingly, intentionally, and/or recklessly omitting, suppressing, and/or concealing the unreasonably dangerous nature of Reglan, metoclopramide HCl and/or metoclopramide; and (4) knowingly, intentionally, and/or recklessly omitting, concealing, and/or suppressing that use of Reglan, metoclopramide HCl and/or metoclopramide poses a significant increased risk of extrapyramidal side effects, including tardive dyskinesia.

93.    Defendants, have violated the Missouri Fair Merchandising Practices Act, by consciously omitting, concealing, and/or suppressing, or otherwise failing to communicate and notify the Plaintiff, purchasers and/or consumers of Reglan, metoclopramide HCl and/or metoclopramide, and the medical community at large, of the negative efficacy and/or safety information that it possessed.

94.    The negative efficacy and/or safety information associated with Reglan, metoclopramide HCl and/or metoclopramide treatment, known by Defendants, was a material fact in that the Plaintiff would not have purchased Reglan, metoclopramide HCl and/or metoclopramide, and would not have suffered injury from using Reglan, metoclopramide HCl and/or metoclopramide, if Defendants had not omitted, suppressed, and/or concealed, or otherwise failed to disclose the negative efficacy and safety information associated with Reglan, metoclopramide HCl and/or metoclopramide.

95.    Defendants intended that the Plaintiff rely upon these suppressions, concealment, and/or omissions as to the efficacy, description, quality, safety, and/or characteristics of Reglan, metoclopramide HCl and/or metoclopramide.  Defendants' deceptive acts and/or practices were specifically designed and intended to induce the Plaintiff to buy Reglan, metoclopramide HCl

and/or metoclopramide and the deception occurred during a course of conduct involving trade or commerce.

96.     As a direct and proximate result of the above violations of the Missouri Fair Merchandising Practices Act, the Plaintiff was actually deceived and such deception caused the Plaintiff to suffer personal physical injury and actual damages from expending consideration and value, *i.e.* money, for the purchase of an ineffective, unsafe, and/or unreasonably dangerous drug, Reglan, metoclopramide HCl and/or metoclopramide.

97.     Plaintiff purchased Reglan, metoclopramide HCl and/or metoclopramide, manufactured, marketed, promoted, and sold by Defendants, and suffered personal physical injury and an ascertainable loss of money, as a result of Defendants' use or employment of methods, acts or practices declared unlawful by the Missouri Fair Merchandising Practices Act, and brings this action to recover money damages in the amount necessary to make them whole.

WHEREFORE, the Plaintiff prays judgment against the Defendant in an amount that this Court deems reasonable for actual damages, punitive damages, reasonable attorney's fees incurred herein and for such equitable and further relief as this Court deems appropriate and just under the circumstances.

### III.     FRAUD

98.     Defendants made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth.  Defendants had in their possession adverse drug event reports, drug studies, and other documentation about Reglan, metoclopramide HCl and/or metoclopramide and yet made the following misrepresentations:

25

    a.   Misrepresentations regarding the frequency of Reglan, metoclopramide HCl and/or metoclopramide-related adverse event reports or occurrences in the Reglan, metoclopramide HCl and/or metoclopramide label, package insert or PDR label;

    b.   Misrepresentations as to the existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Reglan, metoclopramide HCl and/or metoclopramide;

    c.   Misrepresentations as to the efficacy of Reglan, metoclopramide HCl and/or metoclopramide;

    d.   Misrepresentations as to the number of adverse events with the use of Reglan, metoclopramide HCl and/or metoclopramide;

    e.   Misrepresentations regarding the nature, seriousness, and severity of adverse events reported with the use of Reglan, metoclopramide HCl and/or metoclopramide.

99.    Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiff's physicians, healthcare providers and consumers.  Plaintiff did rely upon the misrepresentations that caused Plaintiff's injuries.

100.    Defendants' misrepresentations were the proximate and/or producing cause of Plaintiff's injuries.

## IV.   NEGLIGENCE

101.    Defendants owed Plaintiff legal duties in connection with their development, manufacturing, and distribution of Reglan, metoclopramide HCl and/or metoclopramide. Defendants breached those duties, proximately causing Plaintiff's injuries.  Specifically, Defendants failed to meet their duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Reglan, metoclopramide HCl and/or metoclopramide.  Defendants are liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

26

a. Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by ingesting Reglan, metoclopramide HCl and/or metoclopramide;

b. Failure to adequately warn Plaintiff and Plaintiff's physicians of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury by ingesting Reglan, metoclopramide HCl and/or metoclopramide in unsafe doses;

c. Failure to use reasonable care in testing and inspecting Reglan, metoclopramide HCl and/or metoclopramide so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

d. Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Reglan, metoclopramide HCl and/or metoclopramide;

e. Failure to use reasonable care in the process of manufacturing Reglan, metoclopramide HCl and/or metoclopramide in a reasonably safe condition for the use for which it was intended;

f. Failure to use reasonable care in the manner and method of warning Plaintiff and Plaintiff's physicians as to the danger and risks of using Reglan, metoclopramide HCl and/or metoclopramide in unsafe doses;

g. Such further acts and/or omissions that may be proven at trial.

102.    The above-described acts and/or omissions of Defendant were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff.

## V.    NEGLIGENT MISREPRESENTATION

103.    Defendants failed to communicate to Plaintiff and/or the general public that the ingestion of Reglan, metoclopramide HCl and/or metoclopramide could cause serious injuries after it became aware of such risks.  Instead, Defendants represented in their marketing that Reglan, metoclopramide HCl and/or metoclopramide was safe and effective.

27

104.   Plaintiff bring this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

> a.   Defendants, individually, and through their agents, representatives, distributors and/or employees, negligently misrepresented material facts about Reglan, metoclopramide HCl and/or metoclopramide in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;
>
> b.   The above misrepresentations were made to Plaintiff, as well as the general public;
>
> c.   Plaintiff and their healthcare providers justifiably relied on Defendants' misrepresentations; and
>
> d.   Consequently, Plaintiff ingested Reglan, metoclopramide HCl and/or metoclopramide to Plaintiff's detriment.   Defendants' negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses.

## VI.   MISREPRESENTATION

105.   Defendants are engaged in the business of selling Reglan, metoclopramide HCl and/or metoclopramide.   By their advertising, labels, or otherwise, Defendants have made to Plaintiff, and the public, a misrepresentation of a material fact concerning the character or quality of Reglan, metoclopramide HCl and/or metoclopramide.

106.   Plaintiff justifiably relied on Defendants' misrepresentations in purchasing Reglan, metoclopramide HCl and/or metoclopramide.   Plaintiff has suffered physical harm proximately caused by Defendants' misrepresentations regarding the character or quality of Reglan, metoclopramide HCl and/or metoclopramide.

## VII.   EXPRESS WARRANTY

107.    Defendants are merchants and/or sellers of Reglan, metoclopramide HCl and/or metoclopramide.  Defendants sold Reglan, metoclopramide HCl and/or metoclopramide to consumers, including Plaintiff, for the ordinary purpose for which such drugs are used by consumers.  Defendants made representations to Plaintiff about the quality or characteristics of Reglan, metoclopramide HCl and/or metoclopramide by affirmation of fact, promise and/or description.

108.    The representations by Defendants became part of the basis of the bargain between Defendants and Plaintiff.  Reglan, metoclopramide HCl and/or metoclopramide did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed.  This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiff.

## VIII.   IMPLIED WARRANTY

### A.   WARRANTY OF MERCHANTABILITY

109.    Defendants are merchants and/or sellers of Reglan, metoclopramide HCl and/or metoclopramide.  Plaintiff purchased Reglan, metoclopramide HCl and/or metoclopramide from Defendants and used Reglan, metoclopramide HCl and/or metoclopramide for the ordinary purpose for which it is used by consumers.  At the time it was purchased by Plaintiff, Reglan, metoclopramide HCl and/or metoclopramide was not fit for the ordinary purpose for which such drugs are used.  Reglan, metoclopramide HCl and/or metoclopramide was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in

a manner to accomplish its purpose safely.  Defendants' breach of their implied warranty of merchantability caused Plaintiff's injuries and monetary losses.

**B.**     **WARRANTY OF FITNESS**

110.    Defendants sold Reglan, metoclopramide HCl and/or metoclopramide to Plaintiff with the knowledge that Plaintiff was purchasing Reglan, metoclopramide HCl and/or metoclopramide for a particular purpose.  Further, Defendants knew, or should have known, that Plaintiff was relying on Defendants' skill or judgment to select goods fit for Plaintiff's purpose.

111.    Defendants delivered goods that were unfit for Plaintiff's particular purpose, and thus breached their implied warranty of fitness.  Defendants' failure to select and sell a product which was reasonably safe for its intended use proximately caused Plaintiff's injuries and monetary losses.

**DAMAGES**

112.    Upon the trial of this case, it will be shown that Plaintiff was caused to sustain serious injuries and damages as a proximate result of Defendants' conduct.  Plaintiff will respectfully request the Court and Jury to determine the amount of the loss Plaintiff has incurred in the past and will incur in the future, not only from a financial standpoint, but also in terms of good health and freedom from pain and worry.

**JURY DEMAND**

113.    Plaintiff hereby requests a trial by jury on all issues in this case.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial hereof, the Court grant:

    a.  Judgment against Defendants for actual damages, as set forth above, in an amount in excess of seventy-five thousand dollars ($75,000.00).

b.  Interest on said Judgment, at the legal rate from the date of the Judgment;

c.  Plaintiff's costs of this suit;

d.  Prejudgment interest as allowed by law;

e.  Any additional damages and punitive damages under the facts set forth in this or any amended pleading(s); and

f.  Such other and further relief to which Plaintiff is justly entitled, both in law and in equity.

Respectfully submitted this 7th day of January, 2008.

Respectfully submitted,

BY:  **/s/  JOHN J. DRISCOLL**
John J. Driscoll, # 6276464
Brown & Crouppen, P.C.
720 Olive Street, #1800
St. Louis, MO 63101
Ph: (314) 421-0216
Fax: (314) 421-3395
**ATTORNEY FOR PLAINTIFF**

AND

Daniel J. McGlynn, Louisiana Bar No. 17051
P. Ann Trantham,   Louisiana Bar No.  30972
**MCGLYNN, GLISSON & KOCH, APLC**
P.O. Box 1909
340 Florida Street
Baton Rouge, Louisiana 70821
Telephone:  (225) 344-3555
Facsimile    (225) 344-3666