**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| **SHIRLEY BRINKLEY,** | § | **CAUSE NO. 08-012-DRH** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WYETH, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**DEFENDANTS WYETH AND SCHWARZ PHARMA, INC.'S
MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Fed. R. Civ. P. 56, Defendants Wyeth ("Wyeth") and Schwarz Pharma, Inc.

("Schwarz") respectfully submit this Motion for Summary Judgment and Memorandum of Law

in Support of Motion for Summary Judgment.

<u>**INTRODUCTION**</u>

This is a products liability case. Plaintiff Shirley Brinkley alleges that she suffered

injuries after ingesting the prescription drug metoclopramide. Cmplt. ¶¶ 8-10, 15-16.[1] After the

completion of product identification discovery, Plaintiff conceded that she did not ingest any

product manufactured by Wyeth or Schwarz. Nonetheless, Plaintiff asserts numerous claims

against these defendants, arguing that Wyeth and Schwarz (who, at different times manufactured

the name brand version of the drug) can be held liable for allegedly failing to adequately warn

Plaintiff and her doctors about the risks associated with generic drugs manufactured by other

---

[1]   Citations to Plaintiff's Complaint, Doc. No. 2, filed 1/7/08, shall take the form "Cmplt. ¶ [ ]."

companies.  Because Plaintiff never purchased or ingested a Wyeth or Schwarz metoclopramide product, these claims fail as a matter of law.

Under well-settled Missouri law, a plaintiff asserting products liability claims must establish, among other things, that the defendant manufactured or distributed the specific product that injured the plaintiff.  A defendant cannot be liable for any harm allegedly caused by another manufacturer's product.  In line with this well-settled principle, no Missouri authority -- case law, statute or otherwise -- requires  a name brand drug manufacturer (such as Wyeth and Schwarz) to warn about the risks associated with the use of a generic drug manufactured and distributed by another company.

The proposition advanced by Plaintiff in this case -- that one manufacturer can be held liable for injuries allegedly caused by another manufacturer's product -- has been rejected by every court that has considered it.  Indeed, courts in eleven different states have already rejected such claims brought against name brand Reglan® manufacturers.  Thus, as explained below, this Motion should be granted.

## UNDISPUTED FACTS

Plaintiff filed her Complaint on January 7, 2008.  In the Complaint, Plaintiff alleges injuries resulting from the ingestion of generic metoclopramide.[2]  Cmplt. ¶¶ 8-10, 15-16. Plaintiff asserts product liability claims against three different manufacturing defendants -- Schwarz, Wyeth, and Pliva, Inc.  *Id.* ¶¶ 2-4; 82-111.

Both name brand metoclopramide (Reglan®) and generic metoclopramide are available for prescription use.  *Id.* ¶¶ 1-2.  At different times, Wyeth and Schwarz manufactured and distributed name brand metoclopramide (Reglan®).  *Id.* ¶¶ 2, 4.  From approximately 1989

---

[2]   Reglan®, the name brand version of metoclopramide, is a prescription drug used to treat, among other things, gastric reflux symptoms.  Cmplt. ¶¶ 1-2, 8.

through late December 2001, Wyeth manufactured and distributed name brand Reglan® tablets. Schwarz acquired the rights to name brand Reglan® tablets in late December 2001 and continued to manufacture and distribute the name brand version of the drug at the time Plaintiff stopped taking metoclopramide in April 2007. *Id.* ¶ 4.

In a stipulation executed between Plaintiff, on the one hand, and Wyeth and Schwarz, on the other, Exhibit A attached hereto, Plaintiff admits that: (1) at all times relevant to this case, Plaintiff ingested only generic metoclopramide; and (2) at all times relevant to this case, **Plaintiff did not ingest any metoclopramide, whether generic or name brand (Reglan®), manufactured or distributed by Wyeth or Schwarz**. Notwithstanding the undisputed fact that she never ingested any metoclopramide manufactured by either Wyeth or Schwarz, Plaintiff asserts a variety of product liability claims against both defendants. In a nutshell, Plaintiff argues that Wyeth and Schwarz should be held liable because they failed to adequately warn Plaintiff or her doctors about the risks associated with the use of generic metoclopramide manufactured and distributed by other companies. Cmplt. ¶¶ 15-29.

## ARGUMENT

### I.    MOTION FOR SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008); *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Sellars v. City of Gary*, 453 F.3d 848, 850 (7th Cir. 2006); *Boerner v. Brown &*

*Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is insufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Id.* (citation omitted).

In this case, Plaintiff cannot point to any evidence that would allow a jury to find that Wyeth or Schwarz may be held liable for Plaintiff's alleged injuries. Accordingly, the Court should enter summary judgment in favor of Wyeth and Schwarz and dismiss all claims asserted against them.

## II.  THE COURT SHOULD DISMISS ALL CLAIMS ASSERTED AGAINST THESE DEFENDANTS.

As shown below, Plaintiff's claims, which attempt to hold Wyeth and Schwarz liable for injuries caused by their competitors' products, are contrary to Missouri law *(infra.* at 4-10) and have been rejected by every court that has considered the issue *(infra.* at 10-20).

### A.  Wyeth And Schwarz Cannot Be Held Liable Under Missouri Law For Injuries Caused By Another Manufacturer's Product.

Plaintiff improperly attempts to hold Wyeth and Schwarz liable for her injuries even though neither defendant made the product that allegedly caused those injuries. Missouri does not recognize such claims because: (1) Missouri law requires that the defendant manufactured or distributed the specific product that caused the alleged harm; and (2) Plaintiff cannot satisfy the specific elements of each of her eight claims against Wyeth and Schwarz.[3]

---

[3]     Plaintiff's Complaint appears to contend that Missouri law applies to this case. *See, e.g.,* Cmpl. ¶¶ 88-97. Without conceding this point, the present Motion assumes that Missouri law applies and shows that no liability can attach to Wyeth or Schwarz under Missouri law.

1.    **Missouri Law Requires A Products Liability Plaintiff To Prove That The Defendant Manufactured Or Distributed The Product That Caused The Injury, Regardless Of The Theory Asserted.**

Regardless of the theory of liability advanced, Missouri law requires that a products liability plaintiff prove that the defendant manufactured or distributed the specific product that allegedly caused the plaintiff's injury. *See, e.g.*, *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 115 (Mo. 2007) (*en banc*) ("where a plaintiff claims injury from a product, actual causation can be established only by identifying the defendant who made or sold that product"); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. 1984) (*en banc*) ("to recover under strict liability, **as with any other tort theory**, plaintiff must establish some causal relationship between the defendant and the injury-producing agent") (emphasis added); *Ahearn v. Lafayette Pharmacal, Inc.*, 729 S.W.2d 501, 504 (Mo. Ct. App. 1987) (summary judgment appropriate where defendant "never supplied [the product] to the hospitals where plaintiff was treated.").

As one Missouri court has explained:

> It is fundamental to the law of torts that, **regardless of the legal theory upon which liability is predicated** in a case where the underlying alleged wrongful conduct is the manufacture or marketing of a harmful product **(whether negligence, strict liability, breach of warranty, misrepresentation, nuisance or other grounds)**, it is necessary in order to hold a manufacturer or seller liable for injury caused by a product that there must first be proof that **the defendant being sued actually produced, manufactured, sold or was in some way responsible for the particular product that caused the harm**. This "product identification" requirement (also sometimes called the "manufacturer identification" [sic] requirement) is an element of proximate causation, and serves the function of assigning blameworthiness to culpable parties and limiting the scope of potential liability.

*City of St. Louis v. Lead Indus. Ass'n. Inc.*, No. 002-245, 2006 WL 4547877, at *4 (Mo. Cir. Ct. Jan. 18, 2006) (citing annot., *Products Liability: Necessity and Sufficiency of Identification of*

*Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury*, 51 A.L.R. 3D 1344) (emphasis added).[4]

Here, Plaintiff seeks to hold Wyeth and Schwarz liable for her alleged injuries even though she concedes that she never ingested a product manufactured by either Wyeth or Schwarz. Because Missouri tort law does not allow for such recovery under any theory of liability, Plaintiff's claims against these defendants must be dismissed.

### 2. <u>Plaintiff Cannot Establish The Specific Elements Of Each Of Her Eight Claims.</u>

Plaintiff's failure to meet the most basic "product identification" requirement should be dispositive. *Id.* Even were it not, this Court also should dismiss Plaintiff's claims because Plaintiff cannot allege the requisite elements of her eight theories of relief: (a) strict products liability; (b) negligence; (c) fraud; (d) negligent misrepresentation; (e) misrepresentation; (f) breach of express warranty; (g) breach of implied warranties; and (h) violation of the Missouri Fair Merchandising Practices Act.

#### a. <u>Strict Products Liability.</u>

In support of her strict liability claim, Plaintiff alleges both that the generic metoclopramide she ingested was defectively designed, and that Wyeth and Schwarz failed to warn her about the risks associated with the drug. Cmplt. ¶¶ 82-87. To recover from Wyeth or Schwarz under either theory, Plaintiff must prove that these defendants sold generic metoclopramide to Plaintiff in the course of their business. *See, e.g.*, *Campbell v. Am. Crane Corp.*, 60 F.3d 1329, 1331 (8th Cir. 1995) (failure to warn claim); *Lachance v. Am. Home Prods. Corp.*, No. 01-0890-CV-W-ODS, 2006 WL 89850, at *4 (W.D. Mo. Jan. 13, 2006) (design defect claim); *Mouser v. Caterpillar, Inc.*, No. 4:98CV744 FRB, 2000 WL 35552637, at *12

---

[4] An appendix containing copies of unpublished opinions has been attached hereto as Exhibit B.

(E.D. Mo. Oct. 6, 2000) (failure to warn claim). Plaintiff concedes that she never ingested any metoclopramide manufactured by Wyeth or Schwarz, but instead purchased and ingested only generic metoclopramide manufactured by other companies. Therefore, the Court should dismiss Plaintiff's strict liability claim as against Wyeth and Schwarz.

### b.    Negligence.

Plaintiff's negligence claim also requires proof that Wyeth and Schwarz manufactured or distributed the metoclopramide tablets that Plaintiff ingested. *See, e.g.*, *Lead Indus. Ass'n. Inc.*, 2006 WL 4547877, at *4. Because Plaintiff never ingested any metoclopramide manufactured by Wyeth or Schwarz, her negligence claim should be dismissed on this ground alone.

Plaintiff's negligence claim also fails because Plaintiff cannot prove that Wyeth or Schwarz owed a duty to Plaintiff -- a necessary element of any negligence claim. *Hill v. General Motors Corp., et al.*, 637 S.W.2d 382, 384 (Mo. Ct. App. 1982). Plaintiff's attempt to impose a duty on these defendants for harm allegedly caused by another manufacturer's product runs counter to well-settled principles of negligence as well as public policy. First, there is no Missouri authority that imposes a duty on one manufacturer to warn about the risks associated with another manufacturer's product. Second, there is no Missouri authority that imposes a duty on a manufacturer to exercise reasonable care to ensure that another manufacturer's product is reasonably safe. To the contrary, and as explained above, a manufacturer may only be held liable for the injuries caused by its product; it cannot be held liable for injuries caused by another manufacturer's product. *See Lead Indus. Ass'n. Inc.*, 2006 WL 4547877, at *4. Accordingly, the Court should dismiss Plaintiff's negligence claim for this additional reason.

### c.    Fraud, Negligent Misrepresentation, and Misrepresentation.

Plaintiff also asserts that Wyeth and Schwarz should be held liable because each defendant was the manufacturer of name brand metoclopramide (Reglan®) during parts of the

7

period in which Plaintiff allegedly ingested generic metoclopramide. Plaintiff argues that manufacturers of name brand drugs can be held liable under theories of "misrepresentation" and "fraud" for injuries caused by generic products because generic pharmaceutical manufacturers routinely adopt and rely upon the pharmaceutical labels and warnings that are issued by name brand manufacturers such as Wyeth and Schwarz. *See, e.g.*, Cmplt. ¶ 17. In essence, Plaintiff argues that Wyeth and Schwarz should be held liable for the representations of their competitors, generic drug manufacturers. This claim fails for several reasons.

First, designating claims as "misrepresentation" or "fraud" cannot mask the fact that these claims are grounded on an alleged injury from a product. Rather, as the Supreme Court of Missouri expressly explained in both *Zafft* and *Benjamin Moore & Co.*, a plaintiff seeking to recover under **any** tort theory in a products liability action must prove that the defendant's product was the actual cause of the plaintiff's injury. *See Benjamin Moore & Co.*, 226 S.W.3d at 115-16; *Zafft*, 676 S.W.2d at 244.

Second, Plaintiff cannot make the requisite showing of duty. An essential element of both fraudulent and negligent misrepresentation is "the existence of a duty to disclose." *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo. Ct. App. 2002). As noted above, there is no authority for the proposition that a manufacturer owes a duty of care to the consumers of another manufacturer's product.

Finally, it would violate public policy to hold Wyeth and Schwarz liable here under theories of fraud, negligent misrepresentation, or misrepresentation. As one court explained, construing analogous facts, to impose such liability would require name brand manufacturers to serve as absolute insurers for generic manufacturers' products:

> It . . . seems unfair to hold the pioneer manufacturer liable as insurer for not only its own production but also its generic competitors, especially

> when the latter enjoys the full financial benefits but no risks regarding the product. . . . [T]o adopt plaintiff's contention here would tend to discourage development of new drugs because of the unlimited exposure to the non-benefiting developer of the original product.

*Conte v. Wyeth, Inc.*, CGC-04-437382 at 7 (Cal. Super. Ct. Jan. 29, 2007); *see also Zafft*, 676 S.W.2d at 247 (recognizing "legitimate concerns that liability will discourage desired pharmaceutical research and development while adding little incentive to production of safe products" if companies were to face potential liability even if their product was not ingested). Accordingly, the Court should dismiss Plaintiff's claims for fraud, negligent misrepresentation, and misrepresentation.

### d.    Breach of Express Warranty and Implied Warranties.

Plaintiff's claims for breach of express warranty and breach of implied warranties each require, among other things, proof that Plaintiff purchased a product sold by Wyeth or Schwarz. *See* MO. ANN. STAT. § 400.2-313 (2007) (stating that any purported express warranty must be "part of the basis of the bargain"); MO. ANN. STAT. § 400.2-314 (2007) (stating that implied warranty of merchantability arises only in context of a sale of goods to purchaser); MO. ANN. STAT. § 400.2-315 (2007) (stating that implied warranty of fitness arises only when "the buyer is relying on the seller's skill or judgment"). Plaintiff concedes that she purchased only generic metoclopramide and not any name-brand Reglan® tablets manufactured by Schwarz or Wyeth. Therefore, the Court should dismiss each of Plaintiff's breach of warranty claims.

### e.    Violation of the Missouri Fair Merchandising Practices Act.

Finally, Plaintiff seeks recovery under the Missouri Fair Merchandising Practices Act ("MPA"). *See* Cmplt. ¶¶ 88-97; MO. ANN. STAT. § 407.020 (2007). Section 407.025 sets out the elements for an MPA violation: a plaintiff must allege that she has purchased merchandise for personal, family, or household purposes and suffered an ascertainable loss of money or property

as a result of an act declared unlawful by section 407.020. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) (en banc).

Here, however, Plaintiff has no standing to assert a claim under the MPA because she never purchased Wyeth's or Schwarz's products. *Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-CV-W-FJG, 2007 WL 2507752, slip op. at *2 (W.D. Mo. Aug. 20, 2007) (dismissing plaintiffs' MPA claim for lack of standing because defendants did not sell any goods or merchandise or provide any services to plaintiffs). Accordingly, Plaintiff's MPA claim fails.

**B.** **Courts Have Uniformly Held That Name Brand Manufacturers Cannot Be Held Liable For Injuries Caused By Generic Products, Including The Generic Product At Issue Here.**

Missouri law does not stand alone in rejecting Plaintiff's broad theories of liability. Every court that has confronted the issue has held that a name brand manufacturer cannot be held liable for injuries caused by the ingestion of a generic manufacturer's product. *See Foster v. Am. Home Prods. Corp.*, 29 F.3d 165, 171 (4th Cir. 1994); *Smith v. Wyeth, Inc.*, No. 5:07-CV-18-R, 2008 WL 2677051, at *4 (W.D. Ky. June 30, 2008); *Wilson v. Wyeth, Inc.*, No. 3:07-CV-378-R, 2008 WL 2677049, at *4 (W.D. Ky. June 30, 2008); *Morris v. Wyeth, Inc.*, No. 1:07-CV-176-R, 2008 WL 2677048, at *4 (W.D. Ky. June 30, 2008); *Pustejovsky v. Wyeth, Inc.*, No. 4:07-CV-103-Y, 2008 WL 1314902, at *2 (N.D. Tex. Apr. 3, 2008); *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1354-59 (N.D. Ga. 2008); *Barnhill v. Teva Pharmaceuticals USA, Inc.*, No. Civ. A. 06-0282-CB-M, Order at 4 (S.D. Ala. Apr. 24, 2007); *LeBlanc v. Wyeth, Inc.,* No. Civ. A 04-0611, 2006 WL 2883030, at *6 (W.D. La. Oct. 5, 2006); *Goldych v. Eli Lilly & Co.*, No. 5:04-CV-1477, 2006 WL 2038436, at *3-*6 (N.D.N.Y. July 19, 2006); *Colacicco v. Apotex, Inc.*, 432 F. Supp.2d 514, 540-41 (E.D. Pa. 2006); *Tarver v. Wyeth,* No. Civ. A. 3-04-2036, 2005 WL 4052382, at *2 (W.D. La. June 7, 2005); *Block v. Wyeth, Inc.*, 02-CV-1077, 2003 WL 203067, at *2 (N.D. Tex. Jan. 28, 2003); *Stanley v. Wyeth, Inc.*, 2008 WL 1930154, at *2-*3 (La. App. 1

Cir. May 2, 2008); *Flynn v. Am. Home Prods. Corp.*, 627 N.W. 2d 342, 350 (Minn. Ct. App. 2001); *Sharp v. Leichus*, 04-CA-643, 2006 WL 515532, at *4 (Fla. Cir. Ct. Feb. 17, 2006), *aff'd per curiam*, 952 So.2d 555 (Fla. 1st DCA 2007); *Green v. Wyeth Pharmaceuticals, Inc., et al.*, CV-06-3917 ER, Order at 1 (Ala. Cir. Ct. May 15, 2007); *Conte v. Wyeth, Inc.*, CGC-04-437382, at 7 (Cal. Super. Ct. Jan. 29, 2007); *Kelly v. Wyeth*, 03-CV-3314, 2005 WL 4056740, at *2 (Super. Ct. Mass. May 6, 2005); *Sheeks v. Am. Home Prods. Corp.*, No. 02CV337, 2004 WL 4056060, at *2 (Colo. Dist. Ct. Oct. 15, 2004); *Sloan v. Wyeth*, No. MRS-L-1183-04, slip op. at 5 (N.J. Super Ct. Oct. 13, 2004); *Beutella v. A.H. Robins Co.*, Inc., No. 05-CV-2372, 2001 WL 35669202, at *2 (Utah Dist. Ct. Dec. 10, 2001).

Thus, courts have rejected such claims under the laws of fifteen different states: Alabama, California, Colorado, Florida, Georgia, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, New Jersey, New York, Pennsylvania, Texas and Utah. There is not a single decision to the contrary. Indeed, as explained below, twelve different courts in eleven different states have specifically held that Wyeth and/or Schwarz, as the manufacturers of name brand Reglan®, may not be held liable for injuries allegedly caused by the ingestion of generic metoclopramide.

### 1.    *Foster* - The Leading And Universally Accepted Authority.

The leading case on whether a name brand manufacturer can be held liable for injuries allegedly resulting from the use of a generic equivalent drug is *Foster v. American Home Products Corp.*, which has been adopted by every court that has addressed the issue. *Colacicco*, 432 F. Supp. 2d at 540 ("a review of caselaw [sic] reveals that every state and federal district which has confronted the issue of innovator drug-manufacturer liability has either adopted the *Foster* reasoning or cited *Foster* with approval").

In *Foster*, the parents of a child who died after ingesting generic promethazine brought suit against Wyeth, the manufacturer of Phenergan®, the name brand version of the drug. 29 F.3d at 167.   Even though the parents conceded that only the generic product had been ingested, they argued (as Plaintiff does in this case) that Wyeth, the name brand manufacturer, could be held liable because it knew that generic manufacturers were using and relying upon its product warning information.   *Id.* at 168.   Thus, the parents argued, Wyeth was liable for the decedent's injuries to the extent that warning was defective:

> The [plaintiffs] argue that because generic drugs are required by federal law to be equivalent to their name brand counterparts, any representations Wyeth makes when advertising Phenergan also apply to generic promethazine, and **name brand manufacturers, such as Wyeth, know that generic manufacturers rely on their studies and duplicate their labeling**, and that if the name brand manufacturer does not issue a warning, it will simply not be made. Wyeth is also aware that when Phenergan is prescribed, the patient may actually receive generic promethazine.

*Id.* at 169 (emphasis added).

The Fourth Circuit rejected the Fosters' argument and ruled that one manufacturer cannot be held liable for injuries resulting from another manufacturer's product:

> **The [plaintiffs] are attempting to hold Wyeth liable for injuries caused by another manufacturer's product,** and we are persuaded that Maryland courts would reject this effort to circumvent the necessity that **a defendant be shown to have manufactured the product that caused an injury** prior to being held liable for such injury.

*Id.* at 168 (emphasis added).

Explaining its decision, the Fourth Circuit noted that generic manufacturers are independently responsible for issuing adequate warnings about their products:

> We do not accept the assertion that a generic manufacturer is not responsible for negligent misrepresentations on its product labels if it did not initially formulate the warnings and representations itself. **When a generic manufacturer adopts a name brand**

**manufacturer's warnings and representations without
independent investigation, it does so at the risk that such
warnings and representations may be flawed.**

\*     \*     \*     \*

**Manufacturers of generic drugs, like all other manufacturers,
are responsible for the representations they make regarding
their products.**

*Id.* at 169, 170 (emphasis added).

The court then specifically held that name brand manufacturers cannot be held liable for

injuries allegedly caused by a generic manufacturer's product:

We also **reject** the contention that a **name brand manufacturer's
statements regarding its drug can serve as the basis for liability
for injuries caused by another manufacturer's drug.**

\*     \*     \*     \*

There is **no legal precedent for using a name brand
manufacturer's statements about its own product as a basis for
liability for injuries caused by other manufacturers' products,**
over whose production the name brand manufacturer has no
control.

\*     \*     \*     \*

**The [plaintiffs'] negligent misrepresentation action against
Wyeth also fails because Wyeth is under no duty of care to the
[plaintiffs].**

\*     \*     \*     \*

**We think to impose a duty in the circumstances of this case
would be to stretch the concept of foreseeability too far.**

\*     \*     \*     \*

*Id.* at 170, 171 (emphasis added).

The *Foster* decision is consistent with Missouri law, as described above. Furthermore, it

has been accepted and applied in every case that has examined its holding, including fourteen

cases involving generic metoclopramide. In those fourteen cases, as in the case at hand,

plaintiffs asked the court to hold Schwarz and/or Wyeth liable for "fraud" or "misrepresentation" for injuries resulting from the ingestion of generic metoclopramide.  As explained below, each time the court refused.

### 2.   *Beutella* (Utah) - Rejected These Same Claims.

In *Beutella*, the court held that A.H. Robins (a Wyeth predecessor company) owed no duty to a patient who consumed only generic metoclopramide.  2001 WL 35669902, at *3.  The court then adopted the reasoning and holding of *Foster* -- that a name brand manufacturer may not be held liable for injuries caused solely by the ingestion of generic metoclopramide:  "This Court is persuaded that the conclusions of the *Foster* case are sound and reasonable, and are sufficiently similar to this case to impel the same conclusion here."  *Id.* at *3.

### 3.   *Block* (Texas) - Rejected These Same Claims.

In *Block*, the plaintiff abandoned his strict liability claim against Wyeth, and instead sought liability "under theories of negligence, negligent misrepresentation, fraud, conspiracy, and malice."  2003 WL 203067, at *1.  The court dismissed the claims, holding that a name brand pharmaceutical maker did not "owe[ ] a legal duty to consumers of a generic equivalent arising out of the content of product labeling and descriptions formulated for the name brand drug."  *Id.*

### 4.   *Sloan* (New Jersey) - Rejected These Same Claims.

In *Sloan,* the court rejected plaintiff's "assert[ion] that there is a distinction to be drawn by the Court, that defendant Wyeth was a 'disseminator' of negligently false and misleading information, rather than a 'manufacturer' of a defective product."  Docket No. MRS-L-1183-04, slip. op. at 5.  The court held that neither the "New Jersey or the Federal authorities intended to expand prescription drug manufacturer liability to injuries sustained by generic drug companies which use formulations developed by the brand name company."  *Id.* at 9.  The court further held

that imposing a duty would place an undue burden on name brand manufacturers because such "manufacturers would be less likely to develop new products if liability were imposed upon these companies for injuries wrought by products of generic manufacturers." *Id.*

### 5. *Sheeks* (Colorado) - Rejected These Same Claims.

In *Sheeks*, the court rejected the same claims, holding that "[r]egardless of how termed, the action brought by the [plaintiffs] is a product liability action." 2004 WL 4056060, at *1. Therefore, because Wyeth did not make or sell the generic metoclopramide allegedly ingested, Colorado law, which imposes liability only on the manufacturer of the product used by plaintiff, barred the plaintiffs' claims. *Id.* According to the Court, "Wyeth owed no duty to Plaintiffs to warn of a drug that it did not manufacture or supply." *Id.* at *3.

### 6. *Kelly* (Massachusetts) - Rejected These Same Claims.

In *Kelly*, the court rejected plaintiffs' argument that Wyeth, as the brand name manufacturer had "a duty towards patients for whom, not only Regian [sic] is prescribed, but also towards those who actually ingest a pharmecologically [sic] identical generic equivalent." 2005 WL 4056740, at *3. Relying heavily on *Foster*, the court observed:

> The reasoning of *Foster* has been adopted in other cases where a brand name drug manufacturer has been sued by plaintiffs who were injured after taking its generic equivalent.
>
> *         *         *         *
>
> The statutory scheme governing premarketing approval for drugs simply does not evidence Congressional intent to insulate generic drug manufacturers from liability for misrepresentations made regarding their products, or to otherwise alter state product liability law. Manufacturers of generic drugs, like all other manufacturers, are responsible for the representations they make regarding their products.

*Id.* at *3, *5.

15

### 7.     *Tarver* (Louisiana) - Rejected These Same Claims.

In *Tarver*, the court dismissed claims against Schwarz when the plaintiff ingested only generic metoclopramide because "[t]he law is clear that Louisiana imposes on a manufacturer no duty to warn of the dangers of another company's product." 2005 WL 4052382 at *2 (citations omitted). The *Tarver* court subsequently granted Wyeth's motion for judgment on the pleadings on the same basis. *Tarver v. Wyeth, Inc.,* No. Civ A. 3-04-2036, 2006 WL 1517546, at *2-*3 (W.D. La. Jan. 26, 2006).

### 8.     *Sharp* (Florida) - Rejected These Same Claims.

In *Sharp*, the court entered summary judgment in favor of Schwarz and Wyeth on the plaintiffs' claims for fraud/intentional misrepresentation, negligent misrepresentation, and fraud by concealment involving Reglan® and generic metoclopramide, noting: "[i]t is abundantly clear that the Plaintiffs' case is, in fact, a products liability case." 2006 WL 515532, at *6. The court also rejected the plaintiffs' argument that Schwarz and Wyeth owed a duty of care to patients who might consume the generic equivalents of name brand Reglan®, stating that "a legal duty is not established by evidence of foreseeability alone ... there must also be evidence or allegations showing that ... defendant's conduct **created or controlled** the risk." *Id.* at *7 (emphasis in original) (citations and quotations omitted).

Subsequently, the First District Court of Appeals affirmed the *Sharp* court's grant of final summary judgment in favor of Schwarz and Wyeth *per curiam,* adopting wholesale the reasoning and analysis of *Foster*. *See Sharp v. Wyeth*, 952 So.2d 555 (Fla. 1st DCA 2007) (*per curiam*).

### 9.     *Conte* (California) – Rejected These Same Claims.

In *Conte,* the court granted summary judgment in favor of Wyeth because Wyeth "had no connection with plaintiff's injuries save the fact it developed the product and prepared the

description and other pharmaceutical literature on the drug Reglan when the Food and Drug Administration approved it." CGC-04-437382 at 4. The court ruled that Wyeth had no duty to plaintiff because she never ingested Wyeth's product. *Id.* at 7.

### 10. *Green* (Alabama) – Rejected These Same Claims.

In *Green,* plaintiff's lawyers attempted to assert claims for fraud, negligent misrepresentation and strict liability against Wyeth and Schwarz in Alabama even though "Wyeth and Schwarz did not manufacture the [Reglan®] syrup formulation ingested by plaintiff, Tyler Green." CV-06-3917 ER, Order at 1. Remarking that the courts "that have considered the issues presented in this case have found that only the manufacturer of the generic drug which was sold [is] liable," the Alabama court granted summary judgment in favor of Wyeth and Schwarz. *Id.*

### 11. *Swicegood* (Georgia) – Rejected These Same Claims.

Less than five months ago, a federal court applying Georgia law dismissed claims against Wyeth and Schwarz in the Reglan®/generic metoclopramide context. "This Court joins with other courts nationwide in rejecting the claim that the manufacturer of the branded product is liable for misrepresentation in the labeling of the generic product." *Swicegood*, 543 F. Supp. 2d at 1358 (citing *Foster* with approval). In *Swicegood*, it was undisputed that the plaintiff did not ingest a metoclopramide product manufactured or distributed by Wyeth or Schwarz. Nevertheless, the plaintiff once again sought to rely on the theory that had repeatedly failed before: that Wyeth and Schwarz, as the name brand manufacturers, could be held liable for statements contained in the label of the generic metoclopramide that the plaintiff actually ingested. *Id.* at 1354. Plaintiff fared no better in *Swicegood*, as the court systematically rebutted and dismissed each of plaintiff's claims under Georgia law. *Id.* at 1356 (concluding that the

FDA regulations for prescription drug labeling do "not require a name brand manufacturer to ensure that the generic brand's label is accurate.").

**12.**   *Pustejovsky* **(Texas) – Rejected These Same Claims.**

In April of this year, another federal court in Texas joined the ranks of the courts to reject brand name liability for ingestion of generic metoclopramide. *Pustejovsky*, 2008 WL 1314902, at *2. The *Pustejovsky* court applied Texas law to grant summary judgment in favor of Wyeth and Schwarz when plaintiff (once again) asserted claims against the name brand manufacturers even though she had ingested only the generic version of metoclopramide. *Id.* at *1. The court phrased the question as one of legal duty and answered it squarely in favor of Wyeth and Schwarz: "In this case, Wyeth's and Schwartz [sic] Pharma's lack of a duty to Plaintiff is fatal to all of her common-law claims, including negligence, fraud, and negligent misrepresentation." *Id.* at *2.

**13.**   *Smith*, *Wilson* **and** *Morris* **(Kentucky) – Rejected These Same Claims.**

Most recently, a Kentucky federal court dismissed various product liability claims asserted against Wyeth and Schwarz, as the name brand manufacturers of Reglan®, by three plaintiffs who had consumed only generic metoclopramide. *See Smith*, 2008 WL 2677051, at *4; *Wilson*, 2008 WL 2677049, at *4; *Morris*, 2008 WL 2677048, at *4. In each case, the court concluded that: "As a product liability action under Kentucky law, Plaintiff must show that Reglan was the legal cause of her [Tardive Dyskinesia]. Because Plaintiff does not allege that [Plaintiff] ever took Reglan, [Plaintiff] has not alleged a claim under Kentucky products liability law." *Smith*, 2008 WL 2677051, at *3; *Wilson*, 2008 WL 2677049, at *2; *see also Morris*, 2008 WL 2677048, at *3.

Further, the court rejected plaintiffs' argument that Schwarz's and Wyeth's respective warnings, labeling and marketing concerning Reglan® "should also be seen as the warning,

labeling and marketing of products manufactured by companies that are Defendants' direct competitors in the prescription drug market." *Smith*, 2008 WL 2677051, at *3; *Wilson*, 2008 WL 2677049, at *3; *Morris*, 2008 WL 2677048, at *3.  "Upon examination of applicable Kentucky law, the Court finds that in the generic drug context, Kentucky does not recognizes [sic] a cause of action against a manufacturer for its representations concerning its own product, based on an injury caused from the use of another manufacturer's product." *Smith*, 2008 WL 2677051, at *4; *Wilson*, 2008 WL 2677049, at *4; *Morris*, 2008 WL 2677048, at *4.

### 14.   Plaintiff In This Case Cannot Maintain A Claim Against Defendants For Injuries Allegedly Caused By Generic Metoclopramide.

Despite the fact that all previous attempts to hold Schwarz and/or Wyeth liable for injuries allegedly caused by generic metoclopramide have failed, Plaintiff's counsel comes before this Court making the very same arguments made in each of the previous fourteen metoclopramide cases.  The result in this case should be the same -- Plaintiff should not be allowed to impose liability on Wyeth or Schwarz when Plaintiff concedes that she never ingested a product manufactured by these defendants and, therefore, that neither Wyeth's nor Schwarz's products caused her injuries.

To hold otherwise would improperly make name brand manufacturers responsible for every injury caused by equivalent products made by every generic manufacturer in the United States.  Indeed, such an inequitable, unprecedented, and illogical result would have a devastating impact on the entire pharmaceutical industry. *See, e.g.*, *Foster*, 29 F.3d 170 (observing that such liability would be "especially unfair" because "the generic manufacturer reaps the benefits of the name brand manufacturer's statements by copying its labels and riding on the coattails of its advertising").  For these very reasons, courts have uniformly refused to extend tort law into such "new and uncharted territory." *Block*, 2003 WL 203067, at *3; *see also Colacicco*, 432 F. Supp.

2d at 543 (rejecting plaintiff's invitation "to drastically expand the boundaries of Pennsylvania tort law without precedent or policy to support his position" because "the Supreme Court of Pennsylvania would not accept this invitation").

## CONCLUSION

Plaintiff did not ingest any product that was manufactured, sold, or distributed by Wyeth or Schwarz, and Missouri law does not recognize Plaintiff's broad theories of recovery. This Court should grant Wyeth and Schwarz's motion for summary judgment and dismiss all of Plaintiff's claims against them.

Dated: September 30, 2008

WYETH, INC.
SCHWARZ PHARMA, INC.

by:    /s/ Beth A. Bauer

One of Their Attorneys
Larry E. Hepler, #01195603
Beth A. Bauer, #0627453
HEPLER, BROOM, MacDONALD,
HEBRANK, TRUE & NOCE LLC
103 W. Vandalia St., Suite 300
Edwardsville, IL 62025-0510
Phone:  618/656-0184
leh@heplerbroom.com
bab@heplerbroom.com

       /s/  Jeffrey R. Pilkington (with consent)
Jeffrey R. Pilkington (admitted *pro hac vice*)
Thomas H. Wagner (admitted *pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
Phone:  (303) 892-7513
Fax:  (303) 893-1379
jeff.pilkington@dgslaw.com
tom.wagner@dgslaw.com

/s/  Henninger S. Bullock (with consent)
Henninger S. Bullock (admitted *pro hac vice*)
Andrew J. Calica (admitted *pro hac vice*)
Mayer Brown LLP
1675 Broadway
New York, NY 10019
Phone:  (212) 506-2500
Fax:  (212) 262-1910
hbullock@mayerbrown.com
acalica@mayerbrown.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing pleading has been served

upon the attorneys of record herein on this 30th day of September, 2008, through the operation of

the CM/ECF system of this Court, which will electronically send notice of said filing:

John J. Driscoll – jdriscoll@brownandcrouppen.com

Sandra J. Wunderlich - swunderlich@stinson.com

Thomas G. McIntosh – tmcintosh@ulmer.com

Matthew V. Brammer – mbrammer@ulmer.com


/s/ Beth A. Bauer